John M. Macfarland, appellee, v. James Callahan, appellant.

Filed December 15, 1917.   No. 19702.

1. **Statute of Frauds: Contract: Construction.** An oral contract for services, the consideration to be paid when the promissor shall receive his anticipated share out of the estate of his father, not yet deceased, construed as intended merely to fix the time of payment, and not within the statute of frauds relating to contracts creating an interest in land.

2. **Contracts: Estate Not in Esse.** Nor is such contract an attempt by an heir to contract with reference to an estate not *in esse.*

3. **Limitation of Actions.** Nor is action upon such contract barred by the statute of limitations when commenced within four years from the time the father died.

4. **Contracts: Attorney and Client: Public Policy.** The fact that part of the services rendered as an attorney for an amount agreed upon consisted in defending the promissor on a charge of perjury, alleged to have been committed in the trial of the main action for which the services were employed, will not render the agreement void as against public policy, such defense not being pleaded, and there being no evidence that either of the parties, at the time the contract was entered into, contemplated that perjury would be committed or charged.

Appeal from the district court for Douglas county: Alexander C. Troup, Judge. *Affirmed.*

*E. A. Smith* and *Murphy & Winters,* for appellant.

*Lambert, Shotwell & Shotwell,* contra.

Cornish, J.

Plaintiff recovered judgment against the defendant for his fee and interest, upon an oral contract for services as attorney for the defendant's intestate, James Callahan, on certain charges preferred against him, arising out of the Cudahy kidnapping case. The defendant appeals.

Just what the contract was and its legal effect are among the questions in dispute. It appears that at

the time of the employment Callahan was in jail and desired the services of the plaintiff. He was without means to employ an attorney and did not know when he could pay him. It is contended by plaintiff that the agreement was to pay the fee when Callahan received his share of his father's estate, provided Callahan was freed from any charges brought against him connected with the kidnapping. It is further contended by plaintiff that the reference to the father's estate was only for the purpose of fixing the time when the payment should become due.

It is contended by defendant that the contract was that the plaintiff should be paid out of Callahan's share of the estate when he received it; that the agreement being oral was within the statute of frauds, as it related to real estate alone; that it was void in law as an attempt by an heir to contract with reference to something not *in esse,* that is, an interest in his father's estate, not yet determined by death; and that the action being of such character it was barred by the statute of limitations, suit upon the contract not having been commenced until more than ten years after the services were rendered, but within four years after the father died.

If the contract should be construed as an attempt to create an interest in Callahan's share of his father's estate, it is very possible that the objections, above stated, are well made. It is unnecessary to enter into a discussion of the evidence, showing the exact language used by the parties. It is the defendant's, not the plaintiff's, contention that the contract did or was intended to create in plaintiff any interest in or lien upon or assignment of Callahan's prospective share in his father's estate. If, when Callahan was making his promise, he had said: "I have no money to pay you now; I don't know when I will have; I anticipate that when my father dies I will be possessed of considerable property; I will then be able to pay you

and will pay you''—it could hardly be disputed that the language used would be intended merely to fix the time of payment. Yet, this was substantially the situation of the parties, and we are of opinion that the language used should not be construed as a contract with reference to the anticipated estate. The language used contained no words of transfer, or words amounting to a present appropriation, as distinguished from a promise to appropriate, sufficient to amount to an equitable assignment. 5 C. J. 909; 3 Pomeroy, Equity Jurisprudence (3d ed.) sec. 1283, and note.

The obligation, therefore, not being void as contracted, would not be barred by the statute of limitations until four years after the time of the father's death.

After the main trial in the prosecution had against Callahan, he was prosecuted for alleged perjury in testimony given by him at the trial. In this action the services rendered by plaintiff in defending him against that charge were pleaded and proved. In connection with this, error is assigned on two grounds: First, it is said that if the original contract contemplated that the plaintiff would represent him as attorney on a charge of perjury, not yet committed, the contract would be void as against public policy; and, second, if the contract did not contemplate such services, then evidence of such services was irrelevant and immaterial to the issues. The defendant did not plead that the contract was void as against public policy. There is no evidence that either of the parties, at the time the contract was entered into, contemplated that perjury would be committed or charged. There is nothing on the face of the contract evincing any such purpose.

The defendant was acquitted on the charge made. We are of opinion that there was no evidence adduced, calling for a submission of the question, whether or not the contract was void as against public policy. Under the contract as pleaded and proved, plaintiff was en-

titled to a judgment for the amount agreed upon, or none at all. Evidence of services rendered in the perjury case could not affect the amount of the verdict or prejudicially affect the finding of the jury.

Error is assigned that the court erred in rendering a general judgment against the defendant. When James Callahan died the action against him was "revived in the name of James A. O'Connor, administrator and heir of James Callahan, deceased." The judgment runs against "the defendant." The plaintiff has asked no personal judgment against defendant. We are of opinion that the judgment rendered should be considered as a judgment against defendant as administrator only, and that the form of the judgment is in no way prejudicial to the defendant's rights.

AFFIRMED.